IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br> v. <br><br> **ROBERT R. TORRES**, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** <br><br> Case No. 2:23- CR-00285-JNP <br><br> District Judge Jill N. Parrish |

Defendant Robert R. Torres ("Mr. Torres") moves for an order suppressing evidence obtained as the result of a search warrant issued and executed in December 2022. Mr. Torres asserts that evidence supporting the first two counts of his Indictment (ECF No. 1) must be suppressed because the Government's warrant lacked probable cause and its affidavit was so lacking in indicia of probable cause that officers could not reasonably rely upon the warrant in good faith. For the reasons stated herein, Mr. Torres's motion is DENIED.

**BACKGROUND**

On December 2, 2022, Special Agent Nicolas Shobe of the Weber Morgan Narcotics Strike Force ("WMNSF") submitted an affidavit to a state court judge for a search warrant to install a mobile tracking device on Mr. Torres's gray Volkswagen Jetta. ECF No. 31-1, at 1. Mr. Shobe's affidavit provided the judge with the following facts to establish grounds for the issuance of a search warrant:

> Agents with the WMNSF received information from a confidential informant (CI) that Robert Torres is involved in the distribution of illegal narcotics. The CI stated that Robert was driving to California in his Gray Volkswagen Jetta and bringing back pounds of methamphetamine. It should be noted that the CI is providing this information in lieu of criminal charges and has a good history of providing reliable information that has le[d] to the seiz[ure] of large quantities of methamphetamine by WMNSF agents.

> Upon follow up investigations agents were able to identify a Gray Volkswagen Jetta Utah plate 1G1EM, registered to Robert Torres at the same address. In addition to this information the CI stated that they have knowledge that Robert is leaving to California in his Jetta within the next day to bring narcotics back to Utah.

*Id.* at 3. The judge found the foregoing facts sufficient to establish probable cause and issued a warrant the same day. ECF No. 31-2. Mr. Torres was subsequently arrested following a traffic stop of his vehicle. At the time, Mr. Torres was driving back to Utah from California. Mr. Torres's arrest and an associated vehicle search resulted in the Government's discovery of the narcotics that underlie Counts I and II of the Indictment. Now, Mr. Torres moves to suppress that evidence on the basis that the warrant was not supported by probable cause.

**LEGAL STANDARD**

The Fourth Amendment protects the "right of the people to be secure in their . . . effects[] against unreasonable searches[.]" U.S. Const. amend. IV. A vehicle is a Fourth Amendment "effect" such that the Government's "installation of a GPS device on a target's vehicle . . . constitutes a 'search.'" *United States v. Jones*, 565 U.S. 400, 404 (2012) (citing *United States v. Chadwick*, 433 U.S. 1, 12 (1977)). Subject to "a few specifically established and well-delineated exceptions[,]" a Fourth Amendment search requires a warrant obtained as the result of "the deliberate, impartial judgment of a judicial officer[.]" *Katz v. United States*, 389 U.S. 347, 357 (1967) (quoting *Wong Sun v. United States*, 371 U.S. 471, 481–82 (1963)).

"[N]o Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. "Probable cause exists 'when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed' and that the person or property was involved in the crime." *Patel v. Hall*, 849 F.3d 970, 981 (10th Cir. 2017) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007)). Here, the parties agree that a warrant

2

was required. They dispute only whether the Government's affidavit in support of its warrant application sufficiently established probable cause.

"[W]here, as here, probable cause is based on information received from a confidential informant and a confidential source, 'the court makes a probable cause determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge.'" *United States v. Cruz*, 977 F.3d 998, 1004–05 (10th Cir. 2020) (quoting *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011)). "These factors are not absolute, independent requirements that must be satisfied in order for probable cause to exist . . . . [A] deficiency in one factor may be compensated for by a strong showing of another or by other indicia of reliability." *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009), *cert. denied*, 558 U.S. 959 (citation omitted). Under this standard, information provided by a confidential informant is more reliable if "it is confirmed . . . by officers' independent observations" or otherwise contains "highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity[.]" *Cruz*, 977 F.3d at 1005 (quoting *Quezada-Enriquez*, 567 F.3d at 1233; *Hendrix*, 664 F.3d at 1338).

**ANALYSIS**

Defendant's motion requires the court to determine whether the warrant to search Mr. Torres's vehicle was supported by probable cause. If the court decides that the warrant lacked probable cause, it must also determine whether the warrant was "*so* lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]" *United States v. Edwards*, 813 F.3d 953, 970 (10th Cir. 2015) (citation omitted) (emphasis added). For the reasons stated herein, the court concludes that the officers reasonably relied upon the warrant in good faith and therefore denies Mr. Torres's motion to suppress.

I. **PROBABLE CAUSE**

Defendant argues that the evidence obtained as a result of the search warrant issued on December 2, 2022 must be suppressed because the warrant affidavit failed to establish probable cause. Because the warrant affidavit relied upon information from a confidential informant, the court must determine whether the affidavit established probable cause under the totality of the circumstances, including facts that weigh upon the informant's veracity, reliability, and basis of knowledge. *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)); *Cruz*, 977 F.3d at 1004–05.

Mr. Torres argues that the informant's reliability is supported only by statements "that the informant provided this information in lieu of criminal charges and had a good history of providing reliable information[.]" ECF No. 31, at 5. Mr. Torres also asserts that the informant's own criminal charges establish that he or she is a suspect source. *Id.* at 6. Agents corroborated facts regarding Mr. Torres's vehicle and address prior to submitting the warrant application, but they did not corroborate any of the incriminating information provided by the informant. For example, while the informant stated that Mr. Torres was "leaving to California . . . within the next day to bring narcotics back to Utah[,]" agents did not wait until Mr. Torres in fact left in the direction of California before submitting an application for a warrant to search his vehicle. Finally, Mr. Torres asserts that "[t]he affidavit contains no basis of knowledge whatsoever – it is silent as to whether the informant personally observed the drug crimes, was an eyewitness, had received this hearsay information from a third-party witness, or was merely repeating idle rumors or gossip." *Id.*

The Government argues that the information provided in the warrant affidavit sufficiently established probable cause. The Government believes this conclusion is supported by facts showing that the informant had "previously provided reliable information leading to seizure of

4

large quantities of methamphetamine (the same drug targeted by the investigation in question)"; that the informant was "providing the information in lieu of being charged . . . , suggesting that the informant had also been involved in recent illegal activity"; and that the informant made not only a "bare conclusory statement" regarding Mr. Torres's activity, but instead "alluded to very specific, illegal plans."

The warrant affidavit contains little factual detail. As Mr. Torres notes, it contains no facts regarding the informant's basis of knowledge. At best, the court may infer that the informant may have had personal knowledge of Mr. Torres's alleged criminal conduct because the informant described Mr. Torres's plans with some specificity, detailing to agents that Mr. Torres would leave on a certain day, travel to California in his gray Volkswagen Jetta, and return to Utah with multiple pounds of methamphetamine. *Cruz*, 977 F.3d at 1005 (quoting *Quezada-Enriquez*, 567 F.3d at 1233) (stating that an informant's basis of knowledge may be inferred from "highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity"). Officers could have strengthened that inference by verifying Mr. Torres's alleged plans prior to submitting the warrant application, but they chose not to do so. Instead, agents corroborated only innocent information that the informant provided about Mr. Torres, such as his address and his vehicle's make, model, and color. The corroboration of this type of public, non-incriminating information does little to establish the informant's veracity or reliability. *See United States v. Manning*, 635 Fed. App'x 404, 407 (10th Cir. 2015) ("Corroboration of *non-innocuous* information can obviate the need to establish veracity.") (emphasis added); *United States v. Tuter*, 240 F.3d 1292, 1297–98 (10th Cir. 2001) (concluding that "[t]he minimal corroboration of innocent, readily observable facts" such as "appearance, residence, [and] cars" is "insufficient to establish the veracity or reliability" of an informant).

The fact that the informant provided information "in lieu of criminal charges" could plausibly support either the informant's veracity or a lack thereof. *See, e.g., Quezada-Enriquez*, 567 F.3d at 1233 ("Veracity concerns whether there is reason to believe that the informant is telling the truth, *including whether he faces criminal charges*[.]") (emphasis added); *United States v. Reza*, 2024 U.S. App. LEXIS 3396, at *16 (10th Cir. Feb. 13, 2024) (unpublished) ("Detective Herrera's source was *not* facing criminal charges and did not receive special treatment or payment for providing the information. *This demonstrates the source's veracity*.") (emphasis added). The only remaining fact in the warrant affidavit is that the informant had "previously provided reliable information leading to seizure of large quantities of methamphetamine[.]" This fact "provides some evidence that the confidential informant was reliable" even absent more specific details regarding how often or how recently the informant provided reliable information. *See Manning*, 635 Fed. App'x at 407–08 (citing *United States v. Long*, 774 F.3d 653 (10th Cir. 2014); *United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014)).

Viewed in their totality, the foregoing facts do not seem to establish that the warrant was supported by probable cause. The warrant affidavit contained few facts supporting the informant's veracity or reliability besides a surface-level assertion that the informant had previously provided the Government with reliable information. The informant's criminal charges cannot alone establish the informant's veracity. The court can draw an inference that the informant had a reliable basis of knowledge because the informant spoke to specific plans Mr. Torres had to obtain narcotics. But the fact that the Government corroborated only innocent and publicly accessible information that the informant provided before submitting the warrant application weakens that inference. The court therefore concludes that upon the totality of the circumstances, the warrant affidavit insufficiently detailed facts demonstrating the informant's veracity, reliability, and basis of

knowledge to show probable cause. Notwithstanding that conclusion, however, the court does not find that the warrant affidavit was so lacking of indicia of probable cause that it could not be reasonably relied upon by law enforcement.

## II. GOOD FAITH

Even where a warrant was not supported by probable cause, a defendant is not entitled to suppression so long as "officers acted with an objectively reasonable good-faith belief that a warrant was properly issued." *Manning*, 635 Fed. App'x at 408 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). This good-faith exception to the warrant requirement does not apply, however, in four scenarios: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "in cases where the issuing magistrate wholly abandoned his judicial role"; (3) when officers rely on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient -- i.e., in failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923 (citations omitted). Mr. Torres argues that the Government cannot assert good-faith reliance on the warrant because its affidavit "was so lacking in facts suggesting probable cause to track the vehicle that officers could not have relied on it in good faith." While this court has concluded that the warrant was not supported by probable cause, it nonetheless concludes that the officers relied upon the warrant in good faith. As a result, suppression is not warranted and Mr. Torres's motion is denied.

In *Quezada-Enriquez*, the Tenth Circuit considered the adequacy of a warrant affidavit that stated that a confidential informant had told officers that the defendant possessed a gun and kept

7

the gun in his vehicle and his home. 567 F.3d at 1230–31. The warrant application in that case stated that the informant was "a credible and reliable ATF documented confidential informant . . . who is not working off criminal or other charges and who's [sic] information in the past has led to the seizure of various quantities of illegal narcotic substances, amounts of U.S. currency, firearms and ammunition." *Id.* at 1231. On these facts, "regardless of the fact that the affidavit did not describe the informant's basis of knowledge or if the police corroborated the tip, [the Tenth Circuit] concluded the affidavit was not so lacking in indicia of probable cause as to render the executing officers' reliance on the warrant unreasonable." *United States v. Campbell*, 603 F.3d 1218, 1234 (10th Cir. 2010) (citing *id.* at 1235).

The warrant affidavits in *Quezada-Enriquez* and the present case suffer from a common defect: they contain no information regarding the confidential informant's basis of knowledge. In both that case and this one, the warrant affidavit stated that agents corroborated only innocent information that the informant gave regarding the defendant, such as his appearance, vehicle, and address. Moreover, the indicia of the informants' reliability in the two cases are very similar. In *Quezada-Enriquez*, the warrant affidavit stated that the anonymous informant was "credible" and "reliable" and had previously provided information that led to the seizure of narcotics, currency, firearms, and ammunition. In the present case, the warrant affidavit stated that the informant "has a good history of providing reliable information[,]" which has led to the seizure of large quantities of methamphetamine by WMNSF agents. Mr. Torres argues that the warrant is so lacking indicia of probable cause because the affidavit lacks any basis of knowledge and supports the informant's reliability only by mentioning that the informant has a good history of providing reliable information (without containing any specifics about when or how many times the informant provided reliable information to the Government). But the same facts were true in *Quezada-*

8

*Enriquez*, where the Tenth Circuit declined to exclude evidence discovered as a result of the warrant's issuance and execution.

Notwithstanding the similarities between this case and *Quezada-Enriquez*, two facts primarily serve to distinguish the two cases. First, the warrant affidavit in this case stated that the informant "is providing . . . information in lieu of criminal charges" while the opposite was true in *Quezada-Enriquez*. As the court noted previously, however, this fact could cut in either party's favor. *Compare Quezada-Enriquez*, 567 F.3d at 1233 *with Reza*, 2024 U.S. App. LEXIS 3396, at *16. Second, the warrant affidavit in this case differs from that in *Quezada-Enriquez* because the informant in this case laid out detailed information regarding Mr. Torres's plans. In *Quezada-Enriquez*, the informant stated only that the defendant possessed a "loaded black nine-millimeter pistol that he kept in his vehicle and in his home." 567 F.3d at 1230. The informant provided no information regarding that defendant's specific plans or future conduct. In the present case, by contrast, the informant had knowledge that Mr. Torres "is leaving to California in his Jetta within the next day to bring narcotics back to Utah." The specificity with which the informant detailed Mr. Torres's plans permits an inference that the informant had a reliable basis of knowledge and was more likely to be telling the truth. *Cruz*, 977 F.3d at 1005 (quoting *Quezada-Enriquez*, 567 F.3d at 1233) (stating that an informant's basis of knowledge may be inferred from "highly specific or personal details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity"); *see also United States v. Manning*, 635 Fed. App'x 404, 408 (10th Cir. 2015) ("[S]uch detailed information is more important 'when the informant's basis of knowledge is not described on the face of the affidavit.'") (citation omitted). Viewed together, the key fact distinguishing this case from *Quezada-Enriquez* thus weighs in favor of a conclusion that the officers in this case could reasonably rely upon the warrant in good faith

9

notwithstanding the warrant affidavit's minimal factual representations.

Mr. Torres asserts that this case is similar to *United States v. Gonzales*, in which the Tenth Circuit found that a warrant to search the defendant's vehicle was not supported by probable cause. *See* 399 F.3d 1225, 1228 (10th Cir. 2005). *Gonzales* is unlike the present case in two key respects. First, this case turns on the question of whether the Government included sufficient information in a warrant affidavit that relied upon a confidential informant's statements to establish probable case. In *Gonzales*, no such issue was presented. There, the Government did not rely upon a confidential informant to establish probable cause, but instead relied upon information uncovered in a vehicle inventory search to support its warrant application. *Gonzales*, 399 F.3d at 1227–28. Second, the Tenth Circuit's key holding in *Gonzales* was that the warrant application contained insufficient information to "explain[] how the address" of the place to be searched "was linked to [the defendant] . . . or the suspected criminal activity." *Id.* at 1230. Here, the Government clearly established a link between the informant's statement regarding Mr. Torres's suspected criminal activity and the place to be searched—Mr. Torres's gray Volkswagen Jetta, which the informant stated Mr. Torres would drive to California to transport narcotics. *Gonzales* thus does not alter the court's conclusion that the warrant affidavit contained sufficient information to permit the officers to rely upon the warrant in good faith, notwithstanding the fact that the warrant was not supported by probable cause.

In many cases (such as this one) officers act in objectively reasonable reliance on a warrant issued by a neutral and detached magistrate who determined that there existed sufficient probable cause to support a warrant's issuance. In these cases, *Leon*'s good-faith exception permits admission of the evidence obtained pursuant to that warrant—even if another judge later concludes that warrant was defective—because "the deterrence rationale of the exclusionary rule" would not

be served by the remedy of suppression. *United States v. Pacheco*, 884 F.3d 1031, 1045 (10th Cir. 2018) (citing *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017)). Good faith is absent, and a motion to suppress should be granted, only when "an officer's reliance" upon the warrant "was *wholly unwarranted*[.]" *United States v. Peel*, 565 Fed. App'x 688, 691 (10th Cir. 2014) (emphasis in original). For the reasons stated herein, Mr. Torres has not shown that the officers' reliance upon the warrant was wholly unwarranted. The court therefore concludes that the motion to suppress must be denied as a result of the officers' good-faith reliance upon the warrant.

**ORDER**

Consistent with this Memorandum Decision and Order, Defendant Torres's Motion to Suppress (ECF No. 26) is **DENIED**.

Signed May 20, 2024

BY THE COURT

Jill N. Parrish
United States District Court Judge